## Urian v. Equitable Life Assurance Society, Appellant.

Argued December 5, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Robert J. Sterrett,* with him *Alexander & Green,* of New York City, for appellant.—The death of the insured did not result from "accidental means:" Trau v. Ins. Co., 98 Pa. Superior Ct. 89; Hesse v. Ins. Co., 299 Pa. 125.

*George J. Edwards, Jr.,* with him *Robert Bonner,* for appellee.—Where the inhalation of the gas is collateral to the thing the insured does, so that the inhalation itself is unexpected and unintended, and death results, such death is effected by accidental means: Pickett v. Ins. Co., 144 Pa. 79.

The question of intention was for the jury: Horan v. Ins. Co., 104 Pa. Superior Ct. 474.

OPINION BY MR. JUSTICE DREW, January 3, 1933:

Plaintiff, the beneficiary in four policies of insurance issued on the life of her husband by the defendant, brought this suit to recover under a clause in each of the policies allowing double indemnity if the insured died "by accidental means." After a verdict in her favor, defendant's motions for judgment n. o. v. and a new trial were dismissed and judgment entered on the verdict, and defendant appealed.

The plaintiff, Florence C. Urian, is the widow of George A. Urian, who died September 11, 1930, under the following circumstances: He entered the garage at the rear of his home, about nine a. m., and three hours later his eleven-year-old son went into the garage and found his father dead, seated in his automobile behind the steering wheel. The deceased had a pair of pliers in his hand, which was dirty and greasy, and tools were

lying along the running board. The hood of the automobile was up on the left side, and a plate to which wires were attached had been taken off. The garage was filled with smoke, and the engine was still warm, although not running; the ignition was on, and the gasoline tank was empty. A front door of the garage eight feet high was open about 18 inches, and the back of the car, with its exhaust pipe, was toward that door. The physician who examined the body a short time later testified that death was caused by the inhalation of carbon monoxide gas discharged by the engine; that the gas was odorless, and that inhalation for a period of ten seconds would cause death.

Although the point was not raised at the trial, and the defendant rested without offering any evidence, the court charged the jury in reference to the possible suicide of the insured, and the verdict—which was amply justified by the evidence—resolved that question in plaintiff's favor.

All the policies provided that double indemnity should be paid if the death of the insured resulted "solely from bodily injuries caused directly, exclusively and independently of all other causes by external, violent, and purely accidental means." The principal question raised by this appeal is whether death was caused by "accidental means." It is not disputed that it was the result of "external and violent" means.

The expression "accidental means" has been in use in policies of insurance for more than fifty years. It has been interpreted in nearly every state in the union. The case which is most often quoted is probably U. S. Mut. Acc. Assn. v. Barry, 131 U. S. 100, where the following instructions were approved by the Supreme Court of the United States: "If a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but if, in the act which precedes the injury, something unforeseen, unex-

pected, unusual occurs' which produces the injury, then the injury has resulted through accidental means." This is substantially the definition given in the textbooks: 6 Cooley, Briefs on Insurance (2d edition) 5234; Couch, Insurance, section 1137; Vance, Insurance, 871.

Another frequently quoted definition is that given by SANBORN, J., in Western Comm. Travelers' Assn. v. Smith, 85 Fed. 401: "An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that [every man must be held to intend the natural and probable consequence of his deeds]. On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, ......is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means."

This question was fully considered by Judge KELLER in Trau v. Preferred Acc. Ins. Co., 98 Pa. Superior Ct. 89. In that case the terms of the policy were exactly like the terms of these policies. The plaintiff brought suit to recover for a rupture which he received while he was tightening the strap of a trunk. The court discussed the element of intention, and held he could not recover because, although the rupture was an accident, it was not brought about by accidental means, since he intended the tensing or strain which caused the rupture, even though he did not intend to produce the result. We think the learned judge took particular care to exclude

from the scope of the decision such cases as that now before us, when he said: "In the review of the authorities following we shall not include deaths by accidental drowning, by poison accidentally taken, by accidental inhalation of gas, or by snake bite, for all of them come squarely within the combination of external, violent and accidental means."

In Hesse v. Traveler's Ins. Co., 299 Pa. 125, insured had died from an anesthetic administered for an operation, because of his hypersusceptibility to that anesthetic. The policy was similar to those in the instant case, and it was held that no recovery could be had, for the reason that the death was not caused by "accidental means." The insured had voluntarily inhaled the poisonous gas administered to him. He intended to take it, and the only unintentional and unforeseen element was the unexpected result; the means or cause of death, far from being accidental, was wholly voluntary. The opinion of the court states: "There were no accidental means, all those employed were intentional."

Our cases have uniformly held that where the cause of injury or death was an act of the insured, the means which caused the result, to be accidental, must be undesigned and unintentional, that accidental injury or death is an unintended and undesigned result arising from acts done, while injury or death by accidental means is a result arising from acts unintentionally done. Thus, recovery was allowed on these principles in Taylor v. Gen. Acc. Ass. Corp., 208 Pa. 439; Erb v. Comm. Mut. Acc. Co., 232 Pa. 215; Kelley v. Pittsburgh Cas. Co., 256 Pa. 1; Eby v. Travelers Ins. Co., 258 Pa. 525; Bloom v. Brotherhood Acc. Co., 85 Pa. Superior' Ct. 398; Horan v. Prudential Ins. Co., 104 Pa. Superior Ct. 474; see Pickett v. Pac. Mut. Life Ins. Co., 144 Pa. 79; and denied in Hesse v. Traveler's Ins. Co., supra; Semancik v. Continental Cas. Co., 56 Pa. Superior Ct. 392; Trau v. Preferred Acc. Ins. Co., supra; Camp v. Prudential Ins. Co., 107 Pa. Superior Ct. 342.

Considering the facts of this case in the light of what has been said, it is apparent that insured came to his death as the result of purely accidental means. The breathing of a lethal amount of poisonous gas must either be intentional or unintentional, and the verdict has concluded any thought of self-destruction. It follows that the death of insured was due to an accident, that it resulted from the unconscious inhalation of carbon monoxide gas—probably for a very few seconds—while he was intent on repairing his machine. Although he entered the garage and started the motor of the automobile, it cannot reasonably be argued that the only natural and probable result—which he should have foreseen—of his intentional acts was the generating of poisonous gas in sufficient quantity to cause his death. There is nothing in the record to indicate that he knew of the danger he was in. He had frequently repaired his car and started the motor under practically the same conditions, without any ill effects. It is a matter of common knowledge that thousands of automobile engines are started in closed garages, particularly in the winter months, and that comparatively few deaths result thereby from carbon monoxide poisoning. If he knew of the likelihood that the motor might generate carbon monoxide, there is nothing in the record to show that he did not rely on the open door, and the proximity of the exhaust pipe to it, to carry off the fumes.

Our conclusion that the death of insured was caused by accidental means is supported by many decisions in other jurisdictions. It is now well established that where death is caused by asphyxiation and the breathing of the gas was not intentional, the means or cause of death is accidental: Metropolitan Life Ins. Co. v. Broyer, 20 F. (2d) 818; Fidelity & Cas. Co. v. Waterman, 161 Ill. 632; Cantrall v. Great Am. Cas. Co., 256 Ill. App. 47; Canal-Commercial Trust & Sav. Bank v. Employers' Liab. Acc. Corp., 155 La. 720; Paul v. Travelers' Ins. Co., 112 N. Y. 472; Southern Surety Co. v. Calhoun, 44

S. W. (2d) 459 (Tex. Civ. App.) ; Potter v. Ætna Life Ins. Co., 71 Wash. 374; Miller v. Inter-Ocean Cas. Co., 110 W. Va. 494; Fehrer v. Midland Cas. Co., 179 Wis. 431; Wiger v. Mut. Life Ins. Co., 205 Wis. 95; Cornelius on Accidental Means (edition of March, 1932), page 76.

The case at bar is analogous to those cases where the insured voluntarily ate or drank some poisonous substance, thinking it to be harmless. In such cases it has uniformly been held that a resulting death is caused by accidental means: Bloom v. Brotherhood Acc. Co., supra; Zurich Ins. Co. v. Flickinger, 33 F. (2d) 853; Healey v. Mut. Acc. Assn., 133 Ill. 556; U. S. Cas. Co. v. Griffis, 186 Ind. 126; Brown v. Continental Cas. Co., 161 La. 229. See 7 A. L. R. 1131, 1141; 35 A. L. R. 737, 739.

Defendant also contends that the court below erred in refusing its motion for a new trial, the ground of which was that the charge did not contain an adequate explanation of the distinction between accidental death and death by accidental means. This contention has no merit. The charge was full, accurate and impartial, and in this feature of the case was more than adequate; not only did the learned trial judge tell the jury that there was a distinction between accidental death and death by accidental means, but he quoted to them the definition set forth in U. S. Mut. Acc. Assn. v. Barry, supra, and affirmed two points offered by defendant, further clarifying the matter. There was no error in this respect.

Judgment affirmed.