Adams, Admr., Appellant, *v.* Metropolitan Life
Insurance Company.

Argued April 13, 1939.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD,
PARKER, RHODES and HIRT, JJ.

*James Grove Fulton,* for appellant.

*D. C. Jennings,* for appellee.

OPINION BY PARKER, J., July 13, 1939:

Plaintiff, the beneficiary in three policies of insurance issued by defendant, brought suit thereon, a jury found in his favor and the court below subsequently entered judgment n. o. v. for the defendant. The plaintiff has appealed, assigning as error the entry of judgment for the defendant.

The policies were identical in form and each provided for the payment of $250 on the death of Sadie Adams. As originally written they did not contain any accidental death benefits, but by a rider attached to each policy provision was made for the payment of additional accident benefits. On the death of Sadie Adams, the Metropolitan Life Insurance Company paid the beneficiary the face amount of the policies but refused to pay any additional benefits, claiming that the injuries which resulted in death were not shown to have been due solely to accidental means.

The material parts of the riders upon which plaintiff bases the claim are as follows: "Upon receipt of due proof that the Insured ...... has sustained, after the date of this Policy, bodily injuries, solely through external, violent and accidental means, resulting, directly and independently of all other causes, in the death of the Insured within ninety days from the date of such bodily injuries while this Policy is in force, and while premiums are not in default beyond the grace period

specified in this Policy, the Company will pay in addition to any other sums due under this Policy and subject to the provisions of this Policy an Accidental Death Benefit equal to the face amount of insurance then payable at death ...... No Accidental Death Benefit will be paid if the death of the Insured ...... is caused or contributed to, directly or indirectly, or wholly or partially, by disease, or by bodily or mental infirmity ......"

The defendant offered no testimony except the proof of death and coroner's certificate. In considering a motion for judgment n. o. v. not only must the testimony be read in a light most favorable to the plaintiff and all conflicts therein resolved in his favor, but he must be given the benefit of every fact and inference of fact pertaining to the issues involved which may be reasonably deduced from the evidence: *Guilinger v. Pa. R. R. Co.*, 304 Pa. 140, 144, 155 A. 293. Viewing the evidence in such light, Mrs. Adams had been suffering from neuralgia in her face and toothache and on the evening of June 2, 1931, went to the office of Dr. Shor, a dentist chosen by her, for the purpose of having nineteen teeth extracted. She was accompanied by her husband and brother. Shortly thereafter she entered the dentist chair and was questioned by Dr. Fetters as to whether she had any heart or throat condition to which she replied in the negative. An anesthetic chosen by her, nitrous oxide and oxygen, was then administered by Dr. Fetters and Dr. Marsh proceeded to extract her teeth. She seemed to respond normally to the anesthetic and the extraction was continued by Dr. Marsh until he had removed fourteen teeth in a period of three minutes. Her condition then suddenly changed and she turned a peculiar white color. The anesthetizing was stopped, a heart stimulant was given and the usual respiratory measures applied. The patient not recovering, two physicians were called and the pulmotor squad of the Duquesne Light Company was summoned. After working on her for about two hours, she was pronounced dead.

Evidence was offered showing that aside from the condition of her teeth she was in good health and had no known disease. It was neither shown nor suggested that there was any failure to exercise due care in the administration of the anesthetic or that there was any unusual happening or occurrence such as the slipping of an instrument or other unintended act. The plaintiff relied for proof of facts bringing him within the terms of the rider upon expert testimony tending to show that her death was due to shock occasioned by the removal of fourteen teeth in the short interval of three minutes and that such practice was under the circumstances negligent; that is to say, that although the plaintiff voluntarily submitted to the extraction of fourteen teeth, she did not, owing to the fact she was under the influence of the anesthetic, assent to the negligent removal of the teeth in so short an interval of time as three minutes.

To prove such negligence from which the jury were asked to infer accidental means as a cause of the injury, the plaintiff depended alone upon the testimony of a dentist, Dr. Robert W. Bell, who was graduated in 1931 and had had seven years' experience as a dentist. He testified that for four years he had extracted from three hundred fifty to four hundred fifty teeth a month. In answer to a hypothetical question to which there was no objection the doctor stated that he believed without doubt the death was "due to shock of so many teeth being extracted at once", that as a rule it was not proper practice to pull more than a full lower set or a full upper set at one time and that the speed of extracting varied according to the circumstances that were developed. We then have this question and answer: "Q. Would you say of your knowledge of the custom among dentists that to extract 14 teeth within a period of three minutes is or is not good practice or is or is not negligent practice? A. I believe it is negligent practice." He also testified that there was very

little shock from the administration of anesthetics such as were used here, that if the death had been from the nitrous oxide she would have turned blue, and that the white pallor testified to by the doctor who was present at the pulling of the teeth was the first symptom of shock.

In *Pollock v. U. S. Mut. Accident Assn.,* 102 Pa. 230, 234, our Supreme Court in construing the same phrase as is found in these policies said: "The object of the company is to insure against bodily injuries produced in a certain manner specified, that is, caused by external violent and accidental means. Not injuries caused by any one of these means, but by all of them combined." We followed that construction in *Trau v. Preferred Accident Ins. Co.,* 98 Pa. Superior Ct. 89. We deem it not open to argument that the facts proved were sufficient to sustain a finding that the death of the insured was brought about by external and violent means. In fact such conclusion is practically conceded by defendant, but it is strenuously contended that the means were not accidental.

In many jurisdictions, including the federal and our own state, a distinction is made between accidental injury and injury occasioned by accidental means: *Arnstein v. Metropolitan L. Ins. Co.,* 329 Pa. 158, 162, 196 A. 491; *Hesse v. Travelers Ins. Co.,* 299 Pa. 125, 129, 149 A. 96; *Urian v. Equitable Life Assur. Soc.,* 310 Pa. 342, 344, 165 A. 388; *Semancik v. Continental Casualty Co.,* 56 Pa. Superior Ct. 392, 399, 402; *Trau v. Preferred Accident Ins. Co.,* supra; *U. S. Mutual Accident Assn. v. Barry,* 131 U. S. 100, 9 S. Ct. 755; *Landress v. Phoenix Mut. L. Ins. Co.,* 291 U. S. 491, 54 S. Ct. 461. "Our cases have uniformly held that where the cause of injury or death was an act of the insured, the means which caused the result, to be accidental, must be undesigned and unintentional, that accidental injury or death is an unintended and undesigned result arising from acts done, while injury or death by accidental

means is a result arising from acts unintentionally done": *Urian v. Equitable Life Assur. Soc.*, supra, p. 346.

The Latin word from which the word accident is derived means to happen and the literal meaning of the word is a "befalling" (Webster). In common parlance it has been much restricted in its meaning but it is difficult to find a satisfactory definition. Those engaged in writing accident insurance have generally further restricted the coverage in such policies by limiting claims to those situations where bodily injuries have been sustained solely through external, violent and accidental means. As this jurisdiction has definitely recognized a distinction between accidental injury and an injury by accidental means, the difference in meaning must be taken into account in construing this policy.

Recognizing the difficulty of formulating a definition of accident or even accidental means that is precise and may be applied readily to a given state of facts (1 C. J. S. Accident, p. 425), we seek further light from some of the cases decided by our appellate courts where insurance policies containing similar provisions were involved. In *Hesse v. Travelers Ins. Co.*, supra, the insured required an operation for the removal of a diseased kidney. He assented to the operation knowing that anesthetization would be necessary and chose his surgeon. The anesthetic was properly administered and the operation was skillfully performed without slip, mischance or mistake and without resulting shock. After the operation was performed, the patient suddenly died. It was admitted that the death did not result from the operation but solely from the anesthetic —from the patient's hyper-susceptibility to the particular anesthetic. It was held that the policy did not insure against such a loss.

In *Urian v. Equitable L. Assur. Soc.*, supra, the insured unknowingly and unintentionally inhaled carbon

monoxide gas. A verdict for the beneficiary was sustained.

In *Arnstein v. Metropolitan L. Ins. Co.*, supra, the insured exposed his foot to the rays of a heat lamp for therapeutic purposes and unintentionally fell asleep during the course of the treatment. The resulting lengthened exposure caused a blister and ultimate infection and death. It was held that the means, which subsequent to his falling asleep produced the injury, were accidental within the meaning of the policy.

Assuming for the time being that the evidence of Dr. Bell was sufficient to support a finding that it was negligent practice under the circumstances to extract fourteen teeth within a period of three minutes and that the death of the insured was due to shock produced by the speed of the operation, we inquire whether this was sufficient to show a death from bodily injuries sustained solely through accidental means. Remembering that we are concerned with cause, not consequences, the plaintiff's own evidence shows conclusively that Sadie Adams arranged for the removal of nineteen teeth at one time while she was to be under the influence of an anesthetic and that fourteen of the teeth were removed by the dentist just as was planned. The dentist intended not only to remove nineteen teeth but he designedly, not accidentally, removed fourteen in three minutes. So far as the actor in the extraction was concerned, there was not any means employed or anything in the manner in which the plan was executed which suggests anything accidental for with respect to such means there was no incident or element that could be classed as a mishap, fortuitous happening, untoward event, anything which was not designed. There was not, for example, any slipping of the instruments employed which caused the shock or death. While the death was not expected by either the surgeon or the patient, every death or injury, though unexpected, may not be classed as an accident or said to be due to acci-

dental means. More specifically, it is well settled that the mere fact that a surgical operation is followed by death is not sufficient to support an inference that death resulted from accidental means: *Hesse v. Ins. Co.,* supra.

But the plaintiff argues that the patient neither expected nor intended that the extraction would be performed in a negligent manner and that such negligence, which consisted solely of the rapidity with which the fourteen teeth were extracted, brought such occurrence within the phrase "accidental means." It seems to all of us that to so hold would extend the content of that phrase beyond the meaning given to it in the kindred cases in this and other jurisdictions. It may be, as we said in the Trau case, that loosely speaking the death might be referred to as an accidental one, but in our opinion the evidence fails to show a death resulting from a bodily injury effected solely by accidental means. The dentist, acting with the consent of Mrs. Adams, did precisely what he intended to do until the fourteen teeth had been removed. He planned to extract nineteen teeth and he intended to remove fourteen teeth in three minutes. There was nothing in the means employed that was undesigned or untoward. Not only so, but no mishap occurred. Assuming that the operation was performed too rapidly, this was not done accidentally as that term would be understood by the ordinary policy holder, but intentionally and designedly. According to appellant's own theory, it was the act of the dentist which was the proximate cause of death, but there was nothing in his actions that savored of the accidental. What Mrs. Adams had in her mind is not an element to be considered here in determining whether the bodily injuries which resulted in death were due to accidental means. The claim is not based on what she thought or expected, but upon what the dentist did and there we find no evidence of accidental means. Mrs. Adams did not have anything to do with the actual ex-

traction of the teeth except that she consented to the removal of nineteen teeth at one time while under the influence of gas. The injuries could not, therefore, be said to be due to anything done by her.

The distinction between accidental injury and injury by accidental means becomes important here. While the matter relied upon might be said to be an element proper for consideration if we were concerned alone in ascertaining whether the injury was an accident, it does not show that the injury was due to accidental means. The mere assumption of the patient did not affect the character of the act of the surgeon who was the actor in the transaction and whose actions are relied upon as a basis for recovery.

In *Trau v. Preferred Accident Assn.*, supra, Judge, now President Judge, KELLER in an exhaustive opinion considered a number of the questions raised by this appeal and made a careful analysis of cases in this and other jurisdictions, separating the cases in which a recovery was allowed under policies similar to the one here involved and those in which the right to recover was denied. We believe the conclusion reached in this appeal is in harmony with that decision as well as with those of the Supreme Court to which we have referred. In the Trau case the plaintiff strapped a trunk. "As he was pulling the strap tight he felt a sliding or pinching sensation in his left groin, which, a day or two later, he found to have developed into a rupture, requiring an operation." It was there said: (p. 91) "It may be admitted, for the purposes of this case, that the injury was an accidental one, that is, that it happened by chance or unexpectedly; but that is not the test. Was it caused by *means* which were external, not natural, and which happened by chance or unexpectedly?" Holding that "a means is not accidental when employed intentionally, though it produces a result not expected or intended" we affirmed a judgment for the insurance company.

The appellee has raised a serious question as to whether the testimony was sufficient to justify a finding that the dentist was negligent. In view of the fact that the expert evidence and conclusions of Dr. Bell were not objected to and the case was submitted to the jury on the basis of such testimony, if there was error in this respect the remedy would seem to be a new trial rather than judgment n. o. v. For that reason we refrain from discussing that subject, but see *Remley v. Plummer*, 79 Pa. Superior Ct. 117.

We are all of the opinion that the plaintiff did not bring himself within the provisions of the policies so as to justify a recovery.

Judgment affirmed.