## Kinavey, Admrx., Appellant, v. Prudential Insurance Company.

Argued May 1, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*S. Harold Grossman,* for appellant.

*John L. Miller,* with him *John H. Scott* and *Duff, Scott & Smith,* for appellee.

OPINION BY HIRT, J., July 23, 1942:

Regis Kinavey fell from the Homestead High Level Bridge into the Monongahela River and was drowned. His life was insured by defendant company in the policy in suit which provided for the payment of $500 upon death, and an additional sum of like amount upon proof that insured 'sustained bodily injury, solely through external, violent and accidental means ...... resulting in death.' His mother was paid the face of the policy under a 'facility of payment' provision of the contract, but defendant denied liability for double indemnity on the ground that death did not result from accidental means. This action, brought by his administratrix to recover additional benefits, resulted in the entry of a compulsory non-suit at the close of plaintiff's case. This appeal is from the refusal of the court to take it off.

Giving plaintiff the benefit of every favorable inference from the testimony, the following facts appear: Near eleven o'clock on the night of June 8, 1938, deceased was observed by two of his friends standing on the bridge near Homestead. He was then visibly intoxicated and his friends offered to take him home. He demurred and, instead, the three young men walked across the bridge to the Pittsburgh side. Deceased staggered as he walked but talked coherently. According to the testimony the bridge is about one mile long and they consumed about three quarters of an hour in crossing. When they reached the far side they sat down and 'talked and told jokes.' In the midst of their conversation deceased saw someone he knew a short distance away at the top of the incline and left to talk with him. On his return he eluded his friends and crossed to the other side of the bridge and proceeded in the direction of Homestead. There was a sidewalk on each side of the bridge about four feet in width, about eight inches above the level of the cartway, separated from it by curbing. There was a substantial

metal railing 44 inches high near the outer edge of the walk. At the time, vehicular traffic was heavy in each of the four lanes of the bridge and deceased's friends had difficulty in crossing. In the meantime Kinavey had climbed over the top of the iron railing. The floor of the sidewalk extended about 4 inches beyond the outer edge of the railing and deceased stood on this narrow footing with his hands on the top of the railing. His companions called to him "to get off before he fell." Instead, he began doing stunts; he moved from side to side, crossing one foot over the other; "he hunched up and down" and sat in a crouched position with his hands holding on to the lower part of the upright iron panels of the railing. Just before his companions could reach him he stood up straight with both arms "up in the air"; lost his balance and fell backward into the river.

The evidence does not support the conclusion that deceased committed suicide and we must assume that death was not intentional. Deceased was 22 years old, unmarried and apparently living happily in the home of his mother. He was employed and normally was of good habits; he seldom drank to excess. The inference is reasonable that, with the dulling of his normal inhibitions, he, though he realized the risk and was warned of it by his friends, voluntarily placed himself in a position of great danger and by his conduct was guilty of such recklessness that falling from the bridge was not only forseeable by him, but was almost inevitable. We are in agreement with the lower court that death, therefore, did not result from accidental means and there can be no recovery.

The rule applicable to this class of cases is: 'If a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which pro-

duces the injury, then the injury has resulted through accidental means. This is substantially the definition given in the textbooks; 6 Cooley, Briefs on Insurance (2d edition) 5234; Couch, Insurance, section 1137; Vance, Insurance, 871'; *Urian v. Equitable Life Assur. Soc.*, 310 Pa. 342, 165 A. 388. In this statement of the rule, whether death occurred from accidental means is to be determined not by the fact that death resulted but by the nature of the acts in the light of the attending circumstances. A means is not accidental if intentional even though it produces an unintended result. There must be some occurrence in addition to the voluntary act, something unforeseen, unexpected or unusual, which produces the injury before recovery can be had. Thus, there can be no recovery under an accident policy, such as this, following death from hypersensitivity to anaesthetics, administered in the usual way. *Hesse v. Traveler's Ins. Co.*, 299 Pa. 125, 149 A. 96; *Adams v. Metro. Life Ins. Co.*, 136 Pa. Superior Ct. 454, 7 A. 2d 544. And ordinarily, death following an assault provoked by the assured is not from accidental means, (Annotation, 4 A. L. R. 723; Couch on Insurance, §1158) though under some circumstances the case may be for the jury. *Camp v. Prud. Ins. Co. of A.*, 107 Pa. Superior Ct. 342, 163 A. 320; *Erb v. Commercial M. Acc. Co.*, 232 Pa. 215, 81 A. 207; *Goldsboro v. Loyal Protec. Co.*, 93 Pa. Superior Ct. 583.

Plaintiff is not barred in this case merely because deceased was negligent, for the policy does not except from the risk, injury or death to which the negligence of the insured contributed. 29 Am. Jur. Insurance, §§941-946; Couch on Insurance, §1489. What defeats recovery is the fact that death was not an unusual or unexpected result of the voluntary means employed. An entirely different situation would have been presented if the iron railing had given way or the ledge upon which he was standing had crumbled under his feet or some greasy substance had caused his feet to slip. No

unforeseen element combined with the deceased's acts; no agency independent of his own acts contributed to his death. His every act was voluntary and though his behavior was extraordinary, falling from the bridge was a foreseeable probable result naturally following from his reckless acts. Intoxication to the degree present in this case does not convert an otherwise nonexisting claim into a right of recovery under the policy. Cf. *O'Neill et al. v. Metropolitan Life Ins. Co.*, 345 Pa. 232, 26 A. 2d 898. Deceased, though he staggered to some extent, was agile enough to elude his companions at the Pittsburgh end of the bridge and to weave his way to the sidewalk on the other side. Traffic at the time was so heavy that his sober companions had difficulty in crossing. Insured was intoxicated but he talked coherently implying rational processes of thought; he was still capable of foreseeing the probable results of his conduct though indifferent to the risks assumed.

This conclusion is not inconsistent with the cases cited by plaintiff. In *Arnstein v. Metropolitan L. Ins. Co.*, 329 Pa. 158, 196 A. 491, recovery was allowed where death occurred from sun lamp burns sustained after assured fell asleep. There "the means were employed intentionally only up to the time when plaintiff fell asleep. ...... He did not compose himself to sleep; the falling asleep was an accident" because unintentional and involuntary. Similarly, recovery was had where assured died from monoxide poisoning while repairing an automobile. Undue exposure to the noxious gas, under the circumstances, was not necessarily foreseeable and was not intentional. *Urian v. Equitable Life Assur. Soc.*, supra. Plaintiff places much emphasis on four cases; *Wainstein v. Equitable L. Assur. Soc.*, 318 Pa. 428, 178 A. 502; *Dixon v. Metro. Life Ins. Co.*, 136 Pa. Superior Ct. 573, 7 A. 2d 549; and *Biehl v. Gen. Acc. Assur. Corp.*, 38 Pa. Superior Ct. 110; *Heffron v. Prud. Ins. Co.*, 144 Pa. Superior Ct. 307, 19 A. 2d 556.

In the Wainstein case the defense was suicide. The burden was on the plaintiff to establish that death was caused solely by accidental means but when that was shown, the burden of proof that death was intentional passed to the defendant. *Marlowe v. Traveler's Ins. Co.,* 320 Pa. 385, 181 A. 592. In the Wainstein case the approaching locomotive united with deceased's acts in causing death. The Supreme Court held that proof of suicide depended upon the testimony of the engineer who may have been wrong in his conclusions from the conduct of deceased which he observed. Therefore, the question was for the jury. The same may be said of the Dixon case. In the Biehl case the issue was whether deceased unnecessarily exposed himself to obvious risk (a provision of the policy barring recovery). He was a passenger on a street car and on signaling it to stop walked to the side of the car next to the running board. The circumstances necessarily presented an issue of fact for the jury. In the Heffron case, the defense was suicide and the opinion must be read in that light. If, however, the defense had been the same as interposed in this case, the question of death from accidental means would still have been for the jury for the testimony as to how death occurred was entirely circumstantial.

No independent agency combined with deceased's voluntary acts in the present case and nothing unforeseen, unexpected or unusual occurred in causing his death, other than the result which must have been foreseen; therefore, there can be no recovery.

Judgment affirmed.