## Fox v. American Casualty Company of Reading

*Christian R. Gingrich,* for plaintiff.

*Clarence D. Becker* and *H. Rank Bickel, Jr.,* of *Becker & Ehrgood,* for defendant.

EHRGOOD, P. J., November 12, 1943.—Plaintiff has brought an action in assumpsit against defendant on an automobile accident policy issued by defendant pro-

viding, inter alia, for indemnity for loss of a foot caused by bodily injuries effected through accidental means, claiming the sum of $1,000, with interest from April 26, 1942. Defendant filed an affidavit of defense denying liability under the provisions of said accident insurance policy. . . .

### III

On August 1, 1942, . . . defendant issued and delivered to plaintiff the policy of insurance upon which suit was brought, indemnifying him for the period of one year against loss from accidental injuries to the person, specifying, inter alia, that the sum of $750 should be paid to plaintiff in the event that he suffered the loss of one foot as the result of bodily injuries effected during the term of the policy solely through accidental means and sustained by the insured plaintiff in the manner specified for in said policy. Said policy also provided, inter alia, that if this policy be a consecutive annual renewal of a like policy, each renewal shall add $50 to the indemnity provided for loss of one foot until $250 has been added to the original sum of $750. A notation in the policy, upon which suit is brought, indicates that the renewal of a like policy had been issued for a period in excess of five years.

### IV

Said policy further provides that defendant insures plaintiff against loss resulting directly and independently of all other causes from bodily injuries effected during the term of this policy solely through accidental means and sustained by the insured in the following manner:

"1. While the insured is operating, driving, riding in, adjusting or cranking an automobile.

"2. By the explosion or burning of an automobile.

"3. By being struck, knocked down, or run over by an automobile."

## V

Said accident indemnity policy contains the following additional provision pertinent to the issue being tried:

". . . nor (9) shall the term 'automobile' as used in this policy include a motorcycle or any vehicle or mechanical device for aerial navigation".

## VI

On April 26, 1942, plaintiff, aged 60 years, was employed by Ernest R. Nelson as one of a crew in the transportation of telephone and telegraph poles to be used in replacing worn-out poles of the American Telephone & Telegraph Company on a public road between Palmyra, Lebanon County, Pa., and Hershey, Dauphin County, Pa. On said date the poles were being transported from Myerstown, Lebanon County, Pa., a distance of approximately fifteen miles to the point where the poles were being unloaded. The crew consisted of Ernest Nelson, Roy Nelson, Zack Rice, and plaintiff. The load consisted of from 12 to 30 poles running between 25 and 40 feet in length. The conveyance being used for the transportation consisted of a tractor and trailer, and was being operated by Roy Nelson, who occupied the enclosed cab on the tractor with his father, at a rate of speed of from five to seven miles per hour. Rice was standing on the load of poles at the rear of the trailer, and plaintiff was sitting on the platform, back of the cab, on the tractor. This platform, upon which plaintiff was sitting, was approximately six feet by three feet, and also contained a power winch containing 500 feet of cable for loading the poles on the tractor. The winch was held by four upright poles attached to the winch and platform. The platform was used in carrying tools and the extra men when the weather permitted.

There was an iron pin fitted at each of the four corners of the trailer, the top of which extended about four inches above the top layer of the poles. These pins were used to assist in holding the load on the trailer, for which purpose chains were also used. The truck had stopped and the crew had unloaded a pole for replacement purposes, and was proceeding to the next place for unloading a pole which was a distance of approximately 164 feet. Due to the shortness of this distance the chains were not again placed around the poles. The truck proceeded in low gear at a rate of from five to seven miles per hour and hit a wave in the field, which rocked the load, causing one of the poles to jump over the iron pins on the right side of the trailer. Either plaintiff or Rice "hollered" and plaintiff either fell or jumped off the trailer, his one foot hitting the ground, causing him to fall forward, and one of the poles of the cargo fell on his leg, crushing it, and resulting in the amputation of one of plaintiff's feet.

## VII

When the cargo on the truck got out of control plaintiff was "riding in" the truck, and was either thrown from it or jumped, when exposed to the danger of the shifting cargo of poles, so as to avoid possible injury.

## VIII

Plaintiff lost his foot as the result of a chain of circumstances which had its inception while he was still "riding in" the truck and trailer of his employer.

### Discussion

The policy covered the insured against loss resulting, directly and independently of all other causes, from bodily injuries effected solely through accidental means and sustained while the insured was operating, driving, riding in, adjusting, or cranking an automobile. An

automobile has been defined to be a vehicle for the transportation of passengers or freight, propelled by its own motor. The only exception noted in the policy limiting the term "automobile" is section 9 of paragraph A, under "additional provisions", which provides that said term shall not include a motorcycle, nor any vehicle nor mechanical device for aerial navigation. It therefore seems clear that the truck in which plaintiff was riding was an "automobile" within the provision of the policy of insurance.

The policy also provides that the injury must have been effected through accidental means. An accident has been defined to be an event which, under the circumstances, is unusual, unexpected, or unforeseen. If, in the act which precedes the injury, something unforeseen, unexpected, or unusual occurs which produces the injury, then the injury has resulted through accidental means. See Urian v. Equitable Life Assurance Society, 310 Pa. 342, 344 et seq. Certainly, under the facts in this case the injury to plaintiff resulted solely through accidental means, and, in the opinion of this court, this is true whether the insured was pushed from the automobile by the pole or jumped from the automobile by reason of the unusual, unforeseen and unexpected situation which existed just prior to the injury he received.

The important question for the determination of the court, under the facts, is whether plaintiff suffered the loss of a foot solely through accidental means and injuries sustained while he was "riding in" an automobile. The physical injury suffered by plaintiff was inflicted when he struck the road, and the pole, part of the cargo of the automobile in which he was riding, fell on his leg. It is clear that he was not riding in the car at the time he sustained the injury, and defendant, therefore, contends that plaintiff is not entitled to recover under the terms of the policy sued upon. On the other

hand, plaintiff contends that he is entitled to recover because he was "riding in" the automobile at the time that the unusual, unforeseen, and unexpected circumstances arose which caused the injury to plaintiff, even though the injury itself was actually sustained when insured was no longer within the confines of the automobile; further, that the injury was the direct and probable consequence of the unusual, unforeseen and unexpected circumstances without the intervention of any other extraneous circumstances.

The Pennsylvania rule of construction of a contract of accident insurance is that "The standard for the interpretation of words used in a contract is their natural meaning to the contracting parties at the time and place where it was made, considering all the circumstances then and there surrounding them.

"If doubt exists as to the meaning of the language used in an insurance policy, it should be resolved in favor of the insured rather than in the interest of the insurer. But this rule has no application where the language is clear and unambiguous; in such cases it cannot be construed to mean otherwise than what it clearly says": Urian v. Scranton Life Insurance Co., 310 Pa. 144, syllabus, cited with approval by President Judge Keller in McCowley v. North American Accident Insurance Co., 150 Pa. Superior Ct. 540, 542.

The policy sued upon was negotiated primarily for the purpose of insuring the insured plaintiff against loss resulting directly from bodily injuries solely through accidental means and sustained by the insured, inter alia, while riding in an automobile. This provision is somewhat similar to the provisions of the policy sued upon in the case of Wright v. Aetna Life Insurance Co., 10 F.(2d) 281, 283, in which case the Circuit Court of Appeals for the Third Circuit, inter alia, construed the phrase "riding in" as follows:

"Now, what was the object of the insured when he contracted for indemnity? There can be no doubt it

was for his protection while riding in an automobile—protection against what? The answer is manifest: Against the dangers to which one riding in an automobile is subjected. Collision, overturning of machine, the machine leaving the road, etc., are naturally anticipated . . ."

Applying this reasoning to the policy before this court for construction, and having in mind the circumstances under which the injury was sustained by plaintiff, and bearing in mind that the policy not only covered the situation of the insured "riding in" an automobile used for pleasure, but also for commercial purposes, it would seem to us that the terms of the policy cover a situation where the insured is injured solely as the result of accidental means which occurred while the insured actually was "riding in" the automobile, notwithstanding the fact that the injury which caused the loss of the foot occurred immediately thereafter while the insured was no longer "riding in" the automobile, no extraneous circumstances having occurred which caused the injury or contributed to the cause of the injury. The shifting of a cargo of large poles being transported, under the circumstances in this case, is undoubtedly a danger to which one riding in an automobile of this character is subjected.

Under the facts as found from the evidence we conclude that plaintiff suffered his injury solely as the result of accidental means while "riding in" an automobile. The chain of events which directly caused the injuries sustained was set in motion while plaintiff was actually "riding in" the automobile, and the injury resulted therefrom without the intervention of a new and independent cause. We feel, in arriving at this conclusion, that doubt is not created as to the intention of the parties in this contract of insurance in order to find that plaintiff is entitled to recover thereunder, under the circumstances in this case.

The court makes the following conclusions of law:

### Conclusions of law

1. Plaintiff suffered injuries, namely, the loss of one foot, directly and independently of all other causes, from bodily injury effected solely through accidental means, and sustained by the insured while "riding in" an automobile.

2. Plaintiff is entitled to recover from defendant, under the terms of his contract of insurance sued upon, for the sum set forth in said policy for the loss of one foot.

### Order

And now, to wit, November 12, 1943, defendant's requests for findings of fact and conclusions of law are overruled, a verdict is entered in favor of plaintiff and against defendant in the sum of $1,000; the prothonotary is directed to give notice of the filing of this decision in the Prothonotary's Office of Lebanon County to the parties to this suit, and the prothonotary is directed to enter judgment in favor of plaintiff and against defendant in the sum of $1,000, unless exceptions are filed hereto by either of the parties within 30 days after the service of notice of the filing of this decision.