## McCarron *v.* John Hancock Mutual Life Insurance Company, Appellant.

Argued September 28, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Charles M. Willits,* with him *Ira Jewell Williams,* for appellant.

*Graham C. Woodward,* for appellee.

OPINION BY HIRT, J., December 13, 1944:

Plaintiff's son died on June 14, 1941. She was the named beneficiary in a life insurance policy issued to him by defendant. The contract provided for the payment of $560 on death, and an additional benefit in like amount on "due proof that the insured ..... has sustained bodily injury, solely through external, violent and accidental means ...... resulting in the death of the insured ......" On the proofs submitted, defendant paid the face amount of the policy but disclaimed liability for additional death benefits on the ground that death did not result from accident within the intent of the contract. In this action the trial judge sitting without a jury, in effect, found that the death of insured did result "solely through external, violent and accidental means." Defendant's exceptions to the finding were dismissed and judgment was entered for plaintiff for $560 and interest. Defendant here asks us to reverse the judgment, contending that the evidence does not support the finding. The judgment will be affirmed.

For several months, insured had been in the employ of the Springfield Coated Paper Company of Camden, N. J. He worked on a machine which coated the paper in a finishing process of manufacture. The machine to which he was assigned was located in a large "hot room" of the plant; in the room there were five other similar machines but his machine, alone of the six, was entirely enclosed by partitions in a "hot box." Within the enclosure a high temperature of 120 degrees was maintained to dry the paper as it passed through the box after a special coating was applied to it. The paper in this process of drying was suspended in festoons on sticks resting on moving chains. At times the sticks would fall from the chains and it was then

the duty of insured to go into the box and replace them to keep the flow of paper off the floor. Other emergencies on occasion required him to enter the box to make repairs or adjustments. Formaldehyde was used in the coating of the lot of paper on which decedent was working, to make it waterproof. Some fumes of formaldehyde were always present in the "hot room" but the fumes were much more concentrated in the "hot box" enclosing the machine which insured operated. On the day in question when he emerged from the enclosure after making one of a number of repairs, his color was green and he was seized with a fit of vomiting. He was removed to a hospital and died the following morning. Death, according to the undisputed medical testimony, resulted from the effects of formaldehyde vapor. It is defendant's contention that the conditions under which insured worked on the day of his collapse were no different from those present on prior occasions; that what decedent then did was a part of his normal duties and therefore there was no accident.

The language of the policy, limiting the risks assumed, is the usual statement in accident insurance contracts and its meaning is clear under the settled law. In *U. S. Mut. Acc. Assn. v. Barry,* 131 U. S. 100 this instruction construing "accidental means," as used in insurance policies was approved: "If a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means." This generally accepted meaning of the phrase was adopted in the leading case of *Urian v. Equitable Life Assur. Soc.,* 310 Pa. 342, 165 A. 388, with this comment: "This is substantially the definition given in the text-

books: 6 Cooley, Briefs on Insurance (2d edition) 5234; Couch, Insurance, section 1137; Vance, Insurance, 871." The opinion in the *Urian* case also approves the language of *Western Comm. Travelers' Assn. v. Smith*, 85 Fed. 401, which thus construes the phrase: "An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds. On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, ...... is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means." There has been no deviation from this construction in our decisions. In *Kinavey v. Prud. Ins. Co.*, 149 Pa. Superior Ct. 568, 27 A. 2d 286, (denying recovery for accidental death because not an unusual result of the voluntary acts of the insured) we said: "In this statement of the rule, whether death occurred from accidental means is to be determined not by the fact that death resulted but by the nature of the acts in the light of the attending circumstances. A means is not accidental if intentional even though it produces an unintended result. There must be some occurrence in addition to the voluntary act, something unforeseen, unexpected or unusual, which produces the injury before recovery can be had. Thus, there can

be no recovery under an accident policy, such as this, following death from hypersensitivity to anaesthetics, administered in the usual way. Hesse v. Traveler's Ins. Co., 299 Pa. 125, 149 A. 96; Adams v. Metro. Life Ins. Co., 136 Pa. Superior Ct. 454, 7 A. 2d 544." Many other cases are to the same effect. Cf. *Pickett v. Insurance Co.*, 144 Pa. 79, 22 A. 871; *Trau v. Preferred Accid. Ins. Co.*, 98 Pa. Superior Ct. 89 and cases there cited.

The present case may be close on the facts. But the findings of the trial judge, affirmed by the court in banc, have the effect of the verdict of a jury; plaintiff therefore is entitled to all favorable inferences reasonably deducible from the testimony which support the findings. *Erwin v. Insurance Co.*, 122 Pa. Superior Ct. 203, 186 A. 260; *Jann v. Linton's Lunch*, 150 Pa. Superior Ct. 653, 29 A. 2d 219; 6 Stand. Pa. Prac., Trial, §29. There is no evidence of disease or unusual physical condition which made insured more than normally susceptible to formaldehyde poisoning. But even if there were, the breathing of the gas in a lethal quantity must be regarded as the proximate and therefore the *sole* cause of death under the terms of the policy. *Kelley v. Pittsburgh Casualty Co.*, 256 Pa. 1, 100 A. 494; *Foulkrod v. Standard Acc. Ins. Co.*, 343 Pa. 505, 23 A. 2d 430. The means which caused death were "external"; they were also "violent" in the sense of *extreme* or *intense*—a common meaning of the word. Death therefore resulted solely through external and violent means. We think the evidence supports the finding that death also occurred from accidental means.

Exposure to some fumes of formaldehyde was an incident of insured's regular work during the short period of his employment. Yet a combination of circumstances united on the day of his collapse which were not usual to his employment. The room in which he worked was a "hot room," with a temperature above

normal; heat apparently was necessary to dry the paper as it came from the machines. From the heated room, it was a part of insured's duty at times to go into a temperature of 120 degrees in the "hot box" enclosing his machine. The paper which he was coating was a "two coat job"; the final coat required the use of more formaldehyde than usual to make the paper waterproof. Some days the fumes from formaldehyde were stronger than others and they varied in intensity from "hour to hour." The day in question was damp and humid and, as testified by a fellow workman, "the fumes seemed to stay low." Under these unfavorable conditions insured on the day of his collapse had more trouble with the mechanism and was obliged to go into the "hot box" more often, though not for longer periods, than usual. Under these fortuitous and unusual circumstances, although insured voluntarily entered the enclosure exposing himself to the concentrated gas, it cannot be said that he knowingly assumed the risks involved or that he should have foreseen the danger. *Urian v. Equitable Life Assur. Soc.*, supra. The combination of high temperature, excessive humidity and more frequent exposure to concentrated fumes account for the fatal effect of the vapor. Certainly insured did not contemplate that effect nor could he reasonably have anticipated it under the circumstances. The means therefore were accidental.

Judgment affirmed.