**David G. CARDWELL and Davene l. Cardwell and Nationwide Mutual Insurance Company, Appellees,**

v.

**CHRYSLER FINANCIAL CORPORATION, Appellant.**

Superior Court of Pennsylvania.

Argued April 17, 2002.

Filed June 27, 2002.

Joseph M. Garemore, Mt. Laurel, NJ, for appellant.

Ryan C. Blazure, Kingston, for Nationwide, appellee.

BEFORE: JOYCE, BECK and POPOVICH, JJ.

POPOVICH, J.:

¶ 1 This appeal stems from the order entering summary judgment in favor of Nationwide Mutual Insurance Company on April 9, 2001, in the Court of Common Pleas, Luzerne County. The trial court found that coverage under the policy was not available to either the insured or Chrysler Financial Corporation as the lienholder and that Nationwide Mutual Insurance Company was entitled to judgment as a matter of law. This appeal involves the interpretation of an automobile insurance policy and the determination of whether the lienholder can recover under that policy. For the following reasons, we affirm.

¶ 2 On August 13, 1998, Nationwide Mutual Insurance Company (Nationwide) issued a Century II Auto Policy (Policy) for a 1998 Jeep Wrangler to Davene L. Cardwell (Insured). Chrysler was listed as a lienholder. The Policy was in force at all times pertinent to this action.

¶ 3 In the early morning hours of February 19, 1999, David Cardwell, son of the Insured, was driving the vehicle with her permission. At some point, Officer Jeff Dennis of the Dallas Township Police Department attempted to stop David by turning on the sirens and flashing lights on the police cruiser. However, David did not stop, and a twelve-mile pursuit and chase began. The pursuit ended when David's vehicle left the roadway and came to a stop. Any and all damage to the vehicle came as a result of David's attempt to elude the police officer. Subsequently, David was charged with driving under the influence of alcohol, fleeing and attempting to elude police officers, aggravated assault,

recklessly endangering another person and various summary offenses. David eventually entered a plea agreement with the Commonwealth on April 26, 2000, in which he pleaded guilty to all of the charges filed against him.

¶ 4 On April 28, 1999, Nationwide advised the Insured in writing by certified mail that coverage was denied under the Policy because of the circumstances surrounding the damage to the vehicle. At or about this time, David and the Insured (collectively herein the Cardwells), buyer and co-buyer respectively, refused to pay the outstanding amount due under their agreement with Chrysler.[1] As a result of the Cardwells' refusal to pay, Chrysler demanded that Nationwide pay the outstanding amount due pursuant to the terms of the Policy. Nationwide refused, and Chrysler initiated the present action.

¶ 5 On October 18, 1999, Chrysler filed an Amended Complaint against the Cardwells and Nationwide. On December 23, 1999, Nationwide filed an Answer to the Amended Complaint, New Matter and a Counterclaim for Declaratory Relief in which it alleged that no coverage was available under the policy because of the intentional and willful acts of David. The Cardwells failed to file an Answer. On January 24, 2000, Chrysler obtained a default judgment against the Cardwells.

¶ 6 Chrysler notified Nationwide of the default judgment and offered to assign its rights under that judgment to Nationwide in exchange for payment under the Policy. Nationwide refused.

¶ 7 On July 10, 2000, Nationwide filed a Motion for Summary Judgment. On August 4, 2000, Chrysler filed a Cross–Motion, and the trial court then heard oral argument. By order dated November 30, 2000, the trial court granted summary judgment in Nationwide's favor and denied Chrysler's Cross–Motion. On April 9, 2001, the trial court vacated its November 30th Order and reentered it in order to preserve Chrysler's right to appeal. On May 10, 2001, Chrysler filed its notice of appeal to this Court.

¶ 8 On appeal, Chrysler presents the following questions for our review:

1. Do the intentional acts by the policyholder's representative constitute an "omission" under the loss payable clause of the automobile insurance policy?

2. Is there a distinction between "standard" and "simple" automobile insurance loss payable clauses under Pennsylvania law?

3. Even if a distinction between "standard" and "simple" automobile insurance loss payable clauses exists, is the loss payable clause at issue in this case a simple clause?

Appellant's brief at 2–3.

¶ 9 Before addressing Chrysler's questions for review, we must first address Nationwide's contention that the trial court abused its discretion when it vacated the November 30th Order granting summary judgment in Nationwide's favor and then reentered that order to preserve Chrysler's right to appeal. Nationwide argues that Chrysler's appeal should be quashed as untimely because the November 30th Summary Judgment Order was a final, appealable order and Chrysler failed to file an appeal from this order within thirty days pursuant to Pa.R.A.P. 903(a).

¶ 10 First, we note that where no parties or claims remain, an order granting sum-

---

1. The vehicle was "totaled" and sold at auction. The outstanding amount due to Chrys-  ler was $11,171.20.

mary judgment is considered final, as per Pennsylvania Rule of Appellate Procedure 341(b)(1), and that 42 Pa.C.S.A. § 5505 establishes a 30–day time limit for a trial court to modify or rescind any final order.[2] However, it is also well-established that where a showing of fraud or another circumstance "so grave or compelling as to constitute 'extraordinary cause' justifying intervention by the court," then a court may open or vacate its order after the 30–day period has expired. *See First Union Mort. Corp. v. Frempong,* 744 A.2d 327, 334 (Pa.Super.1999) (citation omitted). As our Supreme Court stated in *Estate of Gasbarini v. Medical Center of Beaver Cty., Inc.,* 487 Pa. 266, 409 A.2d 343, (1979):

> In *York v. George,* 350 Pa. 439, 39 A.2d 625 (1944), we held that the general rule may be disregarded and an unappealed judgment opened if fraud or other equitable considerations required the granting of such relief. *See Fredley v. Crandall Filling Machinery, Inc.,* 234 Pa.Super. 530, 342 A.2d 757 (1975). As our Superior Court has stated in *Great American Credit Corp. v. Thomas Mini–Markets, Inc.,* 230 Pa.Super. 210, 213, 326 A.2d 517, 519 (1974), "Where equity demands, the power of the court to open and set aside its judgments may extend well beyond the term in which the judgment is entered."

*Id.* at 270, 409 A.2d at 345.

¶ 11 In this case, equity demanded the vacating of the judgment and reentering it in order to preserve Chrysler's right to appeal. The record reflects that Chrysler never received notice of the November 30th Order. Linda S. Fossi was the attorney of record for Chrysler. Throughout the legal proceedings, Chrysler's court filings have included Ms. Fossi's current law firm address and phone number. She had not been employed at her previous law firm since prior to the commencement of this action, and at no time did any of the court documents indicate Ms. Fossi's previous law firm. The Rules of Civil Procedure require notice by prothonotary of entry of an order, decree or judgment to each party's attorney of record. *See* Pa. R.Civ.P. 236(a)(2). However, instead of notice of the November 30th Order being sent to the law firm whose name and address was on every pleading, it was sent to Ms. Fossi's previous law firm. Once Ms. Fossi became aware of this error, Chrysler filed a Motion to Vacate the November 30th Order and reenter it in order to preserve its appeal rights. The trial court granted the motion. Considering the breakdown in the court's operation, we find that the trial court did not abuse its discretion in vacating its previous order granting summary judgment and reentering the same order to preserve Chrysler's right to appeal.[3]

¶ 12 Nationwide also argues that even if the trial court did not abuse its discretion in vacating the November 30th Order, Chrysler's Notice of Appeal filed on

---

2. Additionally, the November 30th Order declares the rights of the parties, *i.e.,* coverage under the policy is not available to the insured or to the lienholder, making the order immediately appealable. *See Nationwide Mutual Ins. Co. v. Wickett,* 563 Pa. 595, 763 A.2d 813 (2000) (an order that affirmatively or negatively declares the rights of the parties constitutes an immediately appealable order under Pa.R.A.P. 341(b)(2) and the Declaratory Judgment Act).

3. Instead of vacating the order and reentering it, the trial court could have granted Chrysler the right to appeal *nunc pro tunc* because of the breakdown in the court's operation resulted in Chrysler's lack of notice. *See, e.g., Patterson v. Nationwide Mut. Ins. Co.* 358 Pa.Super. 167, 516 A.2d 1235, 1237 n. 2 (1986).

May 10, 2001, was untimely because it was filed more than thirty days after the April 9th Order reentering summary judgment.

¶ 13 Rule 903 of the Pennsylvania Rules of Appellate Procedure governs appeals from court orders and provides, in pertinent part, as follows:

RULE 903. TIME FOR APPEAL (a) General Rule. Except as otherwise prescribed by this rule, the notice of appeal required by Rule 902 (manner of taking appeal) shall be filed within 30 days after the entry of the order from which the appeal is taken.

¶ 14 Chrysler filed its brief thirty-one days after the trial court entered the April 9th Order. This is in clear violation of the thirty-day time limit in Rule 903. However, once again, Chrysler did not receive proper notice of the order. The thirty-day period did not commence until the order was entered on the docket *and notice had been given to the parties pursuant to Pa. R.Civ.P. 236(b)*. *See Frazier v. City of Philadelphia*, 557 Pa. 618, 735 A.2d 113 (1999) (order is not appealable until entered in docket with notation that notice given pursuant to Rule 236(b)). There is no notice in the record indicating that the order was sent to the parties.[4] Therefore, the thirty-day appeal period was never triggered. *See Commonwealth v. Jerman*, 762 A.2d 366 (Pa.Super.2000) (time for taking appeal not triggered and notice filed after 30 days was timely where clerk failed to furnish copy of order to defendant). Accordingly, we find that Chrysler's appeal is timely. We now will address the questions presented for our review.

■ ¶ 15 We first note that we are reviewing an order granting summary judgment. Rule of Civil Procedure 1035.2 provides that any party may move for summary judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action, or concerning any defense which could be established by additional discovery or expert report. *See* Pa.R.C.P. No. 1035.2(1), 42 Pa.C.S.A. When reviewing a grant of summary judgment, an appellate court may disturb the trial court's order only if there has been "an error of law or a clear or manifest abuse of discretion." *Albright v. Abington Memorial Hospital*, 548 Pa. 268, 279–280, 696 A.2d 1159, 1168 (1997). Our scope of review is plenary in examining questions of law, and we apply the same standard for summary judgment as the trial court employs. *See id.* at 280, 696 A.2d at 1168. We must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *See Ertel v. Patriot–News Co.*, 544 Pa. 93, 98–99, 674 A.2d 1038, 1041 (1996).

¶ 16 First, we will examine the loss payable clause endorsement of the Policy. This endorsement states, in pertinent part:

This endorsement applies to the Comprehensive and Collision coverages provided by this policy. It protects the lienholder named in the policy Declarations.

Payment for loss will be made according to the interest of the policyholder and lienholder. Payment may be made to both jointly, or to either separately. Either way, the company will protect the interests of both.

The lienholder's interest will be protected, except from fraud or omissions by the policyholder or the policyholder's representative.

---

4. We note that the docket did indicate that notices of other orders were mailed, *e.g.*, copies of the November 30th Order were mailed on December 1, 2000.

Nationwide Ins. Century II Auto Policy Number 58 37 C 397560, Declarations, at 3.

¶ 17 The trial court concluded that this endorsement made Chrysler a "simple" loss payee under the Policy. Chrysler argues that the trial court erred in making this conclusion and that the endorsement made Chrysler a "standard" loss payee.

¶ 18 Pennsylvania courts have recognized a difference between a simple loss-payable clause and standard payable clause. The recognition of a distinction has been limited to cases in which the payee lienholder was a mortgagee. However, we find this distinction to be instructive in this case because a holder of an automobile lien is similar to the holder of a mortgage lien.

¶ 19 In *Overholt v. Reliance Ins. Co.*, 319 Pa. 340, 342, 179 A. 554, 556 (1935), our Supreme Court stated that the basic difference between a simple loss-payable clause and a standard mortgage clause is that the former is subject to such defenses as the insurer may have against the mortgagor, while the latter is not. *See also General Electric Credit Corp. v. Aetna Cas. and Sur. Co.*, 437 Pa. 463, 263 A.2d 448 (1970). Simply put, the simple loss clause places the mortgagee (lienholder) in the shoes of the insured. Therefore, if the insurer can assert a defense against the insured, then the insurer can assert this same defense against the lienholder. *See id.* at 474, 263 A.2d at 454. Under this type of policy, the lienholder is simply a party appointed to receive the insurance proceeds to the extent of its interest, and its right to recovery is no greater than the right of the insured. *See id.* at 474, 263 A.2d at 454.

¶ 20 A standard mortgage clause, also called a standard loss payable clause, is broader and provides more coverage for the mortgagee (lienholder) because the in-surance policy expressly indicates that any act or neglect by the insured will not invalidate coverage. *See General Electric Credit Corp.*, at 474, 263 A.2d at 454.

¶ 21 Therefore, the language in the insurance policy distinguishes the two types of loss clauses. If the clause contains such language as to indicate that coverage of the mortgagee (lienholder) will not be invalidated by the acts or omissions of the insured, it is a standard loss payable clause. *See General Electric*, at 474, 263 A.2d at 454. Conversely, if the clause does not contain such language, or explicitly states that the mortgagee's interest will not be protected from the acts or omissions of the insured, then it is a simple loss payable clause. We will examine the language in the clause to determine if it is a simple or standard loss payable clause. This is important to determine if Chrysler has the same rights or more rights than the insured.

¶ 22 As previously stated, the loss payable clause endorsement of the policy states, in pertinent part:

Payment for loss will be made according to the interest of the policyholder and lienholder. Payment may be made to both jointly, or to either separately. Either way, the company will protect the interests of both.

The lienholder's interest will be protected, except from fraud or omissions by the policyholder or the policyholder's representative.

Nationwide Ins. Century II Auto Policy Number 58 37 C 397560, Declarations, at 3. The above language provided explicitly that the lienholder, which in this case was Chrysler, would *not* be protected from the fraud and omissions of the policyholder. *See id.* at 3 (emphasis added). There was no language in the clause indicating that the lienholder's interest would not be in-

validated by the acts or omissions of the policyholder. Accordingly, the loss payee clause stated was that of a simple one.

¶ 23 We will now examine whether Chrysler was covered under the policy. Since the loss payee clause was a simple clause, Chrysler, as the lienholder, had the same rights as the Cardwells, as the insured. Additionally, any defense available to Nationwide against the Cardwells was available to Nationwide against Chrysler. Nationwide claimed that the Cardwells, and therefore, Chrysler, were unable to recover under the policy because of the intentional acts and omissions of David. We agree.

¶ 24 First, in Pennsylvania, whether bodily injury or damage to property is caused by accident must be determined from the perspective of the insured. The Policy provided coverage for a "loss," which was defined as "direct and accidental" damage to the vehicle. *See* Policy at 3. An accident is "an undesirable or unfortunate happening that occurs unintentionally and usually results in injury, damage or loss." *Blackman v. Wright*, 716 A.2d 648, 650 n. 3 (Pa.Super.1998). Thus, David's actions (driving under the influence, eluding a police officer, aggravated assault, recklessly endangering another person and other various offenses, all being criminal acts involving willful conduct that resulted in conviction) and the resulting loss were not an accident. *Cf. State Farm Mut. Auto. Ins. Co. v. Martin*, 442 Pa.Super. 442, 660 A.2d 66 (1995) (willful and malicious assault, being intentional tort, is not "accident" and not covered by liability policy agreeing to indemnify against damage from accident); *see also Germantown Ins. Co. v. Martin*, 407 Pa.Super. 326, 595 A.2d 1172 (1991) (finding coverage under homeowner's policy for damages from insured's shooting rampage would violate public policy).

¶ 25 As our Supreme Court stated in *Urian v. Equitable Life Assurance Society*, 310 Pa. 342, 165 A. 388 (1933):

Our cases have uniformly held that where the cause of injury or death was an act of the insured, the means which caused the result, to be accidental, must be undesigned and unintentional, that accidental injury or death is an unintended and undesigned result arising from acts done, while injury or death by accidental means is a result arising from acts unintentionally done.

*Id.*, at 346, 165 A. at 390 (*quoted in State Farm v. Martin*, 442 Pa.Super. 442, 660 A.2d 66). In *Esmond v. Liscio*, 209 Pa.Super. 200, 224 A.2d 793 (1966), an insured opened his car door for the purpose of hitting a pedestrian, an act found by the trial court to be intentional assault. The liability insurance coverage provided for injury caused by accident. This Court held that there was no coverage for the insured's conduct because "a person should not be indemnified by insurance against the consequences of his willful, criminal assault." *Id.*, 224 A.2d at 798 (*quoted in State Farm v. Martin*, 442 Pa.Super. 442, 660 A.2d 66). Therefore, the Cardwells were not indemnified by Nationwide against the consequences of David's criminal acts. Accordingly, Chrysler, who as a simple loss payee, stands in the shoes of the Cardwells, was also not indemnified by Nationwide.

¶ 26 Second, David's criminal acts resulted in an omission under the loss payable clause endorsement of the Policy. David was operating the vehicle when a police officer attempted to stop him. David failed to stop, and a twelve-mile police chase resulted. Nationwide argues that the conviction for fleeing or attempting to elude a police officer denoted David's omission of his duty as a motorist on a public roadway. The trial court

agreed and noted additionally that David pleaded guilty to numerous other criminal charges from this incident. We find that the trial court did not abuse its discretion in finding that the criminal acts, in this case, amounted to an omission by David.

¶ 27 The endorsement clearly states that the lienholder's interest, which was Chrysler, would not be protected from fraud or omission of the insured or the insured's representative. Since David's omission caused the damage, Nationwide was not protecting Chrysler's interest.

¶ 28 For these reasons, we find that the trial court did not err in granting summary judgment in Nationwide's favor because the loss payable endorsement clause made Chrysler a simple loss payee who could only collect if the Cardwells could collect and they could not collect because of David's criminal acts. Accordingly, the order granting summary judgment in favor of Nationwide must be affirmed.

¶ 29 Affirmed.