Billo *v.* Allegheny Steel Company, Appellant.

Argued October 6, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*William A. Challener,* with him *William A. Challener, Jr.,* for appellant.

*Abraham Fishkin,* for appellee.

OPINION BY MR. JUSTICE MAXEY, November 12, 1937:

Plaintiff brought an action in trespass against defendant, alleging that he contracted the occupational disease of silicosis as a result of inhaling, while in the grinding department of defendant's plant, a quantity of steel, ascoloy and carborundum dust, causing him physical injuries permanent in character. These injuries resulted, according to his allegations, from the negligence of the defendant in failing to supply (1) adequate exhaust fans to carry off the dust, and (2) sufficient ventilation, all of which were required by sections 11 and 13 of the Factory Act of 1905, P. L. 352. There was also a general allegation that the defendant failed to supply the plaintiff with reasonable and safe appliances with which to work and that the defendant failed to warn the plaintiff of the danger to his health from the inhalation of the poisonous dust generated by the emery wheels.

Plaintiff was employed in defendant's grinding department, using emery wheels, from May 15, 1928, until August 31, 1933, when he became ill and incapacitated. At the beginning of his employment in that department

there were nine grinders in operation and later twenty for the purpose of eliminating defects in the steel product. No exhaust fans were supplied to draw off the resulting dust, although such devices were in use in another department of the same mill. Defendant denied that plaintiff was suffering from silicosis and that the conditions under which he worked would or could produce it.

After trial the jury returned a verdict for plaintiff in the sum of $6,000. Defendant's motion for judgment n. o. v. was refused and its motion for a new trial was granted. Defendant appealed from the refusal of its motion for judgment n. o. v.

Appellant's basic "question involved" is: "Where there is nothing in the pleadings or in the evidence to remove either party from the provisions of the Workmen's Compensation Act of 1915, P. L. 736, is not the action barred by the employee's voluntary and contractual surrender of his right to any form or amount of compensation or damages for any injury or death occurring in the course of his employment other than as provided by Article III of said act?"

This question must be answered in the negative. It is clear from the language of the Workmen's Compensation Act and from a long line of cases interpreting its provisions that under this Act the relationship of employer and employee in respect to compensation for injuries received by the employee "in the course of his employment" becomes a matter of contract only in so far as those injuries fall within the classification of Article III, section 301 of the Act of June 2, 1915, P. L. 736 (the Workmen's Compensation Act, hereinafter referred to as the Act), as limited by section 1, Article I of the act.

Section 301 of the Act says: "The terms 'injury' and 'personal injury' as used in this act shall be construed to mean only violence to the physical structure of the body, and such disease or infection as naturally results therefrom." Appellant contends that silicosis causes

violence to the physical structure of the body and that therefore an employee who contracts silicosis is "injured" within the meaning of section 301 (supra) and though the act does not provide compensation for such an injury, he is barred from bringing an action for damages arising from it.

The error in appellant's reasoning is this. The Workmen's Compensation Act does not apply to all cases where workmen receive injuries which do "violence to the physical structure of the body." Every disease affecting human beings is pathologically an alteration of the normal, "healthy" condition of the human body. This alteration involves some degree of "violence," though in common usage the word "violence" connotes a *vehement* application of force as, for example, when the word is used to describe the intensity and destructiveness of a storm. "Violence" or "violent" is not ordinarily used to characterize the progress of a disease. Tuberculosis, like silicosis, causes, in a technical sense, violence to the physical structure of the body, yet when one dies of such a disease we do not say that he "died a violent death," as we do when a person meets death by being struck by an automobile or by being shot. Diseases are often "virulent" but they are not "violent."

Conceding that diseases may involve "violence" *in some degree* to the "physical structure of the body," it is clear that a workman who has contracted a disease in the course of his employment, does not come within the provisions of the act unless that disease had its origin in an injury by accident, as it did, e. g., in the case discussed in *McCauley v. Imperial Woolen Co.*, 261 Pa. 312, 104 A. 617. There the germ of the disease which caused an employee's death entered his body through a scratch caused by a "sticker" in the wool that the employee was carrying in the course of his employment, "accidentally tearing his neck." It was expressly held in that case that occupational diseases are not within the provisions of the act, and it has been so held in many other cases.

Appellant apparently overlooked or did not give due weight to section 1 of Article I of the Workmen's Compensation Act, which provides that the Act "shall apply to all accidents occurring within this Commonwealth. . . ." The conclusion is inescapable that only when an employee *meets with an accident* in the course of his employment do the provisions of the act become operative as to him. This being the fact, it follows that, when an injury which he suffered was not due to an accident, the act does not become operative as to him, and the "release" which appellant stresses and which is provided for in section 303 of Article III of the Act, does *not* apply. Subsection (b) of section 302 of the Act provides that under certain circumstances (which were present in this case) a laborer is "conclusively presumed" to be within the Act,[1] unless certain things are done (which were not done here) and then section 303 provides that "Such [a presumed] agreement shall constitute an acceptance of all the provisions of article three of this act, and shall operate as a surrender by the parties thereto of their rights to any form or amount of compensation or damages for any injury or death occurring in the course of the employment. . . ." Appellant asks us to interpret the words "any injury" in section 303 as including an occupational disease, but this we cannot do without ignoring section 1 of Article I of the Act, above cited. *All the numerous provisions of the Workmen's Compensation act apply only to cases arising from accidents, and occupational diseases do not so arise.*

In *Lane v. Horn & Hardart Baking Co.*, 261 Pa. 329, 104 A. 615, this court held that " 'the term "personal injury" in our [Workmen's Compensation] act is confined to injuries of accidental origin and such diseases as

---

[1] This does not mean, however, that the Act becomes *operative* as to an employee when he is not a victim of accidental injury in the course of his employment.

naturally result therefrom [i. e., from the accidental injuries], and must be held to include any form of bodily harm or incapacity [accidentally] caused by [either] external violence or physical force. . . . A stroke by lightning, a stroke from the direct rays of the sun, a heat stroke, or heart prostration, are untoward, unexpected mishaps and accidental injuries within the meaning of the act.' "

Appellant emphasizes and apparently stands upon the proposition that "The Pennsylvania release clause is a complete bar to the action." The answer is that it would be if the Workmen's Compensation Act included within its provisions *injuries arising from occupational diseases*. But *this it does not do*. The Amendment to Article III, section 21 of the Constitution, empowered the legislature to enact laws "requiring the payment by employers, or employers and employees jointly, of reasonable compensation [1] for injuries to employees arising in the course of their employment, and [2] for occupational diseases of employees. . . ."

The act passed in the exercise of authority so granted does *not* provide for the payment of compensation to those employees who are victims of occupational diseases. The Act of 1915 leaves them exactly as they were before the Constitutional Amendment quoted was adopted. Appellant cannot sustain its proposition that victims of "occupational diseases" (for whom, it concedes, no compensation is provided in the act) are brought within the intendment of the act because of the provision for compensation for injuries arising in the course of employment when these injuries involve "violence to the physical structure of the body." The act in its entirety must be interpreted as if to the phrase just quoted, there was added (as section 1 of Article I of the Act so clearly implies) these words: "when said violence was due to an accident."

Appellant says in its paper book: "The mistake of the plaintiff that runs through all of his contentions is the

assumption that the Workmen's Compensation Act does not apply because it does not compensate [him]." Appellant then adds: "The act does not purport to compensate for all injuries or even for all accidental injuries. For instance, the following injuries are not compensable: 1. Accidental injuries where the disability does not extend beyond seven days. 2. . . . . 3. . . . ."

We do not so interpret plaintiff's position and it clearly is not ours. When an employee sustains injuries which bring him within the provisions of the Workmen's Compensation Act, the question as to what extent he is compensated depends on the provisions of the act as judicially interpreted, if such interpretation be required. Though for disabilities of only seven days or less he receives no compensation, that fact does not alter the major fact that for all accidental injuries arising in the course of his employment, the only measure of his compensation is to be found in his "agreement" with his employer; if that measure yields him nothing, as it does for disabilities of seven days or less, the assumption is that he is nevertheless satisfied with his agreement, for should he again be injured in the course of his employment and his consequential disability should be of more than seven days duration, he will be compensated as the agreement provides.

The plaintiff-appellee here is not within the act because it expressly applies "to all accidents occurring within this Commonwealth" and by clear implication to nothing else, and since plaintiff's claim does *not* arise *from an "accident,"* he is not affected by the act. (For a judicial interpretation of the word "accident" as used in the act under discussion, see the opinions of Mr. Justice DREW in *Lacey v. Washburn & Williams Co.*, 309 Pa. 574, 577, 164 A. 724, and of Lord LOREBURN in *Ismay & Co. v. Williamson*, Law Rep. A. C. 1908, 437, 439.)

Appellant cites the case of *Swartz v. Conradis*, 298 Pa. 343, 148 A. 529, and misinterprets a statement found

in that opinion, reading as follows: "When the statutory employer accepts article III he is relieved of all liability for compensation at common law. Section 303 makes the 'agreement [referred to in Section 302] operate as a surrender by the parties thereto of their rights to any form or amount of compensation . . . or to any method of determination thereof, other than as provided in article III of this act." Immediately after this quotation, appellant says: "It is to be observed that this release or surrender applies to any injury occurring in the course of the employment and is not limited to a release of the right to compensation for injuries *by an accident in the course of the employment.*"

The deduction of appellant from the excerpt he quotes from the present Chief Justice's opinion in the case cited is palpably erroneous, as a reading of the entire opinion conclusively demonstrates. The case arose out of an injury to a workman, which was caused by the accidental falling of a ceiling upon him. *The excerpt quoted applies only to those cases which arise under the act* and, as already pointed out, no case can arise under the act except cases arising from "accidents."

Appellant also advances the proposition that in Pennsylvania no action lies at common law for the contraction of an occupational disease. He cites Justice WALLING's opinion in *Mauchline v. State Insurance Fund,* 279 Pa. 524, 124 A. 168. Justice WALLING, after there pointing out that "the medical evidence indicates that such a condition [emphysema] is normally of slow development and probably here came on gradually," says "if so, it was not an accident but the result of an occupational disease, the risk of which the employee assumes and for which the statute provides no compensation." It is unquestionable that for an occupational disease *the statute* provides no compensation, but Judge WALLING did not mean by the excerpt quoted that the employee assumes the risk of an occupational disease to such an extent that *he cannot resort to his common law remedy to secure*

*compensation, provided the disease, whether occupa-*
*tional or otherwise, arose from negligence on the part*
*of employer.* If, for example, a man contracted small-
pox through another's negligence, he would have a right
of action against the tort-feasor. To be *stricken with*
*disease* through another's negligence is in legal contem-
plation as it often is in the seriousness of consequences,
no different from *being struck with an automobile*
through another's negligence.

It is well settled in Pennsylvania that an employee
has a common law right of action against his employer
for injuries caused by disease contracted by the em-
ployee in the course of his employment and due to the
negligent conduct of the employer in violation of a stat-
utory duty. In *Fritz v. The Elk Tanning Co.,* 258 Pa.
180, 101 A. 958, this court held that where a tanning
company knew of the existence of poisonous fumes and
gases arising in its bleach room and did not provide for
their elimination by exhaust fans or other sufficient de-
vices, a workman who was poisoned by inhaling these
fumes and who was injured thereby without any negli-
gence on his part, was entitled to recover. In that case
it is said that "under section 11 of the Act of May 2,
1905, P. L. 352" (the Factory Act), "it was defendant's
duty to know the character of the fumes and gases aris-
ing in its bleach room" and that "the provisions of the
statute are mandatory." See also *Fegley v. Lycoming*
*Rubber Co.,* 231 Pa. 446, 80 A. 870.[2]

In *Plazak v. Allegheny Steel Company,* 324 Pa. 422,
188 A. 130, the right of an employee to recover damages
for an occupational disease resulting from the negli-
gence of his employer was recognized, and the doctrine
was reiterated that failure of the employer to provide
for the employee a reasonable and safe place to work as
provided by the Act of May 2, 1905, P. L. 352, consti-

---

[2] See Bohlen on "The Common Law Right of Action for Occu-
pational Disease in Pennsylvania," 63 U. of P. Law Rev. 183.

tutes a breach of a statutory duty. Mr. Justice LINN, who spoke for this court in that case, quoted from *Moore v. Juvenal*, 92 Pa. 484, 490, as follows: " 'Where the declaration, . . . alleges a breach of duty and a special consequential damage, the breach of duty and not the consequential damage is the cause of action.' "

The Workmen's Compensation Act was and is humanitarian in its purposes. It provides for compensation and without resort to a suit at law in all cases of injuries to employees arising from accidents in the course of employment. It provides for compensation in such cases even though the employer was guilty of no negligence and the employee might have been guilty of negligence. It would be a perversion of the humane purpose of the act to hold that in respect to occupational diseases arising from the negligence of the employer, an employee was by the act deprived of a valuable legal right which had theretofore been his. No court will give the act such an interpretation unless required so to do by the act's explicit language. There is no such requirement here. On the contrary, it is clear that the act affects the rights of only those employees who are injured by *accidents* in the course of their employment and does not affect in the slightest degree the mutual rights and obligations of employees and employers in respect to injuries suffered by the former from diseases caused by the employers' negligence.

The court below granted a new trial, saying: "The conclusion is inescapable that the verdict was against the weight of the evidence." The court then gives its reasons for reaching this conclusion. We find nothing in the record which would justify us in disturbing this exercise of the court's discretion. As this court said in *Plazak v. Allegheny Steel Company*, supra: "When the determination of a fact is controlling and a court has granted a new trial because in its opinion the jury reached a result that cannot be sustained by the evidence, this court will not substitute its judgment for

that of the trial judge who saw and heard the witnesses and was therefore in better position to pass on the question."

The judgment is affirmed.