### The BERYLLIUM CORPORATION
### v.
### AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, Appellant.
### No. 11505.

United States Court of Appeals Third Circuit.

Argued March 24, 1955.

Decided June 1, 1955.

---

Lynn L. Detweiler, Philadelphia, Pa. (Swartz, Campbell & Henry, Philadelphia, Pa., on the brief), for appellant.

Samuel Kagle, Philadelphia, Pa. (Oscar Brown, Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH and McLAUGHLIN, Circuit Judges, and LORD, District Judge.

McLAUGHLIN, Circuit Judge.

An assured under a comprehensive general liability policy sued its insurer on the policy in the district court and obtained judgment in its favor. The insurance company appeals. Pennsylvania law governs this diversity action.

The policy in suit is a "Comprehensive General Liability Policy." Its pertinent clause is designated "Coverage A—Bodily Injury Liability". It reads:

> "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under contract as defined herein, for damages, including damages for care and loss of services, because of *bodily injury, sickness or disease,* including death at any time resulting therefrom, sustained by any person or persons and *caused by accident.*" (Emphasis supplied).

Plaintiff appellee is a producer of the mineral beryllium.[1] It is agreed that the wife of one of its employees and the daughter of another died of beryllium poisoning contracted through handling the employees' work clothes during periods of five and eight years respectively. Suits were brought against The Beryllium Corporation on behalf of the decedents. The insurance company disclaimed. The corporation settled the claims directly and sued in the present action for the amount of the settlements and counsel fees.

Appellant argues that though the deaths were accidental i. e. unintentional they were not the result of an accidental cause. It is contended that in each instance there must be a single unexpected distinctive event for the particular death in order to come within the policy. Effort is made to classify the poisonings as within the so-called occupational disease group and thus controlled by Pennsylvania decisions interpreting the language of the compensation act of that

---

[1]. A hard, light, steel-gray metallic element used chiefly in copper alloys.

state. Billo v. Allegheny Steel Co., 1937, 328 Pa. 97, 195 A. 110; see McCauley v. Imperial Woolen Co., 1918, 261 Pa. 312, 328, 104 A. 617.

There is no mystery about the facts. The minute particles of beryllium which had adhered to the clothing of the employees concerned became detached and entered the lungs of decedents setting up conditions which resulted fatally to them. It is accepted by appellant that the Beryllium Corporation negligently failed to warn its employees of the danger and to provide proper safeguards against it; further that the two employees were ignorant of the existing menace of beryllium poisoning. Appellant says that it is not known whether decedents possessed that knowledge. As to this, the basic cases were not tried but settled out of court so there is no affirmative evidence that decedents did not know the lethal nature of beryllium. However, with the employees themselves admittedly not having that knowledge there is a legitimate inference that the wife of the one and the daughter of the other who lost their lives from its fatal effects were also unaware of that fact. In addition there normally is a reasonable inference against death being self-inflicted. Walters v. Western & Southern Life Ins. Co., 1935, 318 Pa. 382, 178 A. 499. To assume that they for years deliberately and understandingly handled the agent which eventually killed them would be contrary to that inference and unwarranted in the absence of proof to support it.

The lodging of the metal particles in the lungs of the women were distinctive events whether noted at the time or not. There is no suggestion that the women had intended harming themselves. There is the above stated inference that while they meant to launder the clothes they were not endeavoring to poison themselves in the process. They cannot be reasonably said to have been voluntarily dealing with a poison about which they knew nothing. In all probability they noticed dirt and dust on the clothes. They might have considered

this in part at least to be beryllium but the important circumstance is that there is no evidence they realized they were using a deadly poison and, as has been stated, the logical inferences are against that theory. It follows that the absorption of the toxic particles into their lungs must be held to have been unforeseen by the decedents and its end result, their deaths, not to have been the natural or probable consequence of the performance of the routine household tasks involved. Urian v. Equitable Life Assurance Society, 1933, 310 Pa. 342, 165 A. 388; McCarron v. John Hancock Mut. Life Ins. Co., 1944, 156 Pa.Super. 287, 40 A.2d 118; Bloom v. Brotherhood Accident Co., 1925, 85 Pa.Super. 398.

As far as the employer corporation is concerned the accidental cause theory must again be sustained. There was undoubtedly an element of carelessness present but we do not have the slightest hint of wilfulness in that connection. See Springfield Tp. v. Indemnity Insurance Co., 1949, 361 Pa. 461, 463, 64 A.2d 761; Kraftsow v. Brown, 1953, 172 Pa.Super. 581, 585–586, 94 A. 2d 183. It is clear that the corporation had not designedly exposed the employees' families to the poison and indeed had no thought that they were. From the standpoint of the company the carrying of the beryllium away from the plant and into the employees' homes with the consequent danger and resulting deaths would seem to have been a completely unexpected tragic occurrence.

This brings us to the main point in this appeal. While these deaths clearly resulted from accidental causes it was not just one but a series of causes which produced them. Appellant contends that this defeats the claims. Its theory as we have mentioned is that the policy contemplated that the accidental means must be an isolated occurrence.

The policy may have so contemplated but if that were its purpose it is not easy to explain why it did not say so. If restriction to covering accidents resulting from a single accidental cause was part, and an important part, of the pro-

tection furnished; entered into the premium income, cost, etc., it seems curious that it was not plainly stated so that the insurance purchaser would know the limitations of his policy and at least have the opportunity of safeguarding himself with more complete insurance.

By the contract in suit the company agrees to pay the arising damages from death "caused by accident". If this clause was confined to one accident, if the word "an" had been inserted so that the language read "caused by an accident", there would be some justification for the argument now made. With full knowledge, we must assume, of a basic principle of insurance law that ambiguity in the company drawn policy will be resolved against the insurer,[2] the drafter of the agreement inserts this at least ambiguous phrase and it is now used in an effort to defeat these serious claims. We are unable to accept such contention. As we read the clause it does not bar the accidental deaths before us caused as they were "by accident".

We are sustained in this view by the excellent opinion of the Supreme Court of Illinois in Canadian Radium & Uranium Corp. v. Indemnity Ins. Co., 1952, 411 Ill. 325, 104 N.E.2d 250, 254. The facts there were much like ours except in that case the injured person was an employee. The policy was the same sort of " 'Comprehensive General Liability Policy' " and contained the language " 'caused by accident' ". The poison was radium and, as here, it was repeated absorption that injured the claimant. On the same sort of an action as before us where the employer having paid the damages sued its insurance company the court was faced with our identical question and held that the contract covered the injury involved. The court said in 411 Ill. at page 332, 104 N.E.2d at page 255:

> "The conclusion that this construction of 'accident' is a natural and reasonable one, embodying the normal and customary use of the

word as commonly understood, is reinforced upon examination of its application to the instant situation. Although disability caused by exposure to radioactive material does not, of course, result automatically from following an occupation involving the use of such substances, it is well known that these materials must be used and handled with the utmost precaution or injury will result. It is only natural, therefore, that an employer engaged in handling these dangerous substances would seek insurance protection against accidents resulting from that use, and having procured a 'Comprehensive General Liability Policy' covering his liability for damages because of 'bodily injury, sickness or disease * * * caused by accident', would feel protected against such mishaps. If the nature of radium was such that it could accomplish its injury in a single, blinding exposure due, for example, to faulty emanators or equipment or improper handling because of inadequate instructions, there could be little doubt as to the 'accidental' nature of the event. The fact that the use of the faulty emanators or the improper handling must be carried on a number of times to effect the injury should not and does not render the event any less accidental, as that term is commonly understood by the ordinary businessman."

In that case the name of the employer "Canadian Radium & Uranium Corporation", said the court in 411 Ill. at page 334, 104 N.E.2d at page 256, made the rule as to ambiguity particularly applicable because "the very name of the plaintiff should have informed the insurer of the likelihood of occurrences such as the one described in Mary Moore's complaint against plaintiff in the Federal Court, and induced it, if it did not intend to insure against such a risk,

2. See 13 Appleman, Insurance Law and Practice, Sec. 7401 (1943), and Pennsylvania cases cited therein.

to exclude specifically from coverage any liability because of injury, sickness or disease caused by radioactivity." We could say the same thing with respect to the name "The Beryllium Corporation."

The Illinois Workmen's Compensation Act restricted meaning of the word "accident" was also urged by the appellant insurance company in the Canadian Radium suit to be binding on the court and as to this the holding was, 441 Ill. at page 335, 104 N.E.2d at page 256:

"We hold that the restricted meaning of the word 'accident,' as found in our Workmen's Compensation Act, does not apply here, and that because the 'usual meaning of the word is broader', Globe Indemnity Co. of New York v. Banner Grain Co., 8 Cir., 90 F.2d 774, 783, and covers the present situation, and because the ambiguity which would otherwise result would have to be resolved against the insurer, the decision of the Appellate Court upon this point is erroneous and cannot stand."

The identical result was reached by the Eighth Circuit in the cited Globe Indemnity Co. case with regard to inhaling poisonous tetrachloride fumes. There state court construction of the term "accident" appearing in the Minnesota Workmen's Compensation Act was held inapplicable.[3]

In the face of these decisions appellant urges a Pennsylvania decision which held that the occupational disease of silicosis did not come within the provisions of that state's 1915 Workmen's Compensation Act. Billo v. Allegheny Steel Co., supra. In the first place, it is very questionable whether beryllium poisoning can properly be labeled an occupational disease of the female members of a beryllium worker's family. Judge Kirkpatrick, in the opinion below, said:

"If it made any difference, I would have no hesitation in holding that that which caused the women's death was neither occupational nor a disease. Certainly, handling poisonous clothing is not a risk voluntarily assumed by a housewife as a 'natural danger' incident to her occupation. McCauley v. Imperial Woolen Co., supra [261 Pa. 312, 104 A. 617]. The fact is these women were poisoned, and no more died of disease as the word is commonly used and understood by laymen than if they had swallowed a fatal quantity of arsenic or mercury or any other inorganic poison."[4]

In the second place, even if we assumed for the sake of argument that beryllium poisoning is an occupational disease, it is clear that the narrow state interpretation of the Compensation Act was based to a large degree, and rightly so, on the particular legislative phraseology and the constitutional background in which the law was enacted. Thus, as the state supreme court pointed out, 328 Pa. at page 99, 195 A. at page 112, the Pennsylvania Workmen's Compensation Act defines the injuries covered by the Act:

" 'The terms "injury" and "personal injury" as used in this act shall be construed to mean only violence to the physical structure of the body, and such disease or infection as naturally results therefrom.' "[5]

And with regard to the constitutional background, the state supreme court held in 328 Pa. at page 102, 195 A. at page 113:

"Appellant emphasizes and apparently stands upon the proposition

3. See also Maryland Casualty Co. v. Pioneer Seafoods Co., 9 Cir., 1940, 116 F.2d 38.

4. In the McCauley case referred to above, a wool sorter received a small scratch on his neck through which an anthrax germ, a disease carried by sheep, entered with fatal results occurring three days later.

The Pennsylvania Supreme Court held that the wool sorter's death resulted from an accident within the meaning of the Workmen's Compensation Act, and not from an occupational disease.

5. Now appearing in Pa.Stat.Ann. Tit. 77, § 411.

that, 'The Pennsylvania release clause is a complete bar to the action.' The answer is that it would be if the Workmen's Compensation Act included within its provisions *injuries arising from occupational diseases.* But *this it does not do.* The Amendment to Article 3, § 21 of the Constitution, empowered the legislature to enact laws 'requiring the payment by employers, or employers and employees jointly, of reasonable compensation (1) for injuries to employees arising in the course of their employment, and (2) for occupational diseases of employees * * *.'

"The Act passed in the exercise of authority so granted does *not* provide for the payment of compensation to those employees who are victims of occupational diseases. The Act of 1915 leaves them exactly as they were before the constitutional amendment quoted was adopted."

The above analysis is borne out by the fact that in 1939, the legislature enacted a new separate act known as "The Pennsylvania Occupational Disease Act." Pa.Stat.Ann. tit. 77, §§ 1201–1603 (1952).

In the light of this, the Pennsylvania decisions that deal with accidental deaths caused by inhaling formaldehyde vapor, McCarron v. John Hancock Mut. Life Ins. Co., supra, by inhaling carbon monoxide gas, Urian v. Equitable Life Assurance Society, supra, and by mistakenly taking soluble salts of barium instead of barium sulphate, Bloom v. Brotherhood Accident Co., supra, are more helpful in determining pertinent Pennsylvania law. In the present state of the Pennsylvania law we would be unjustified in assuming that the Pennsylvania courts when confronted not with a statute but with an insurance contract which indemnifies the insured for damages paid for "bodily injury, sickness or disease * * * caused by accident," would restrict such broad language to only those injuries caused by an identifiable event, particularly in view of the well-established principle, ap-

plied in Pennsylvania as elsewhere, that an ambiguity must be construed against the insurer.

The judgment of the district court will be affirmed.