**HARTFORD FIRE INSURANCE COM-PANY, a corporation,**

v.

**Hazel M. FOULKE, individually and doing business as Hardinger Transfer Company.**

Civ. A. No. 307.

United States District Court
W. D. Pennsylvania.

Oct. 6, 1955.

Washabaugh & McClure, Erie, Pa., for plaintiff.

William F. Illig, of Gifford, Graham, MacDonald & Illig, Erie, Pa., for defendant.

GOURLEY, Chief Judge.

This proceeding relates to an interpretation of a motor vehicle cargo liability insurance policy.

The section of the policy which gives rise to the litigation provides, inter alia, that the insurer agrees to indemnify the assured against loss or damage to goods and merchandise while being transported, provided, however, that the insurer shall not be liable for loss or damage to the cargo caused directly or indirectly by the load or any portion thereof coming into contact with any other object unless the carrying vehicle also collides with such object.

For reason of brevity, the following abbreviations will be employed:

"Hartford" for Hartford Fire Insurance Company;

"Hardinger" for Hardinger Transfer Company, and

"Pelham" for Pelham Electric Manufacturing Corporation.

The facts are not disputed and the matter is adjudicated by the court on the basis of stipulated facts.

It appears that Hardinger was employed by Pelham to haul by tractor trailer a quantity of switchboards. The merchandise was placed in a trailer and covered with a tarpaulin, which was manufactured and used solely for said trailer. The tarpaulin which covered the merchandise came in contact with a viaduct during the transportation of the merchandise by the tractor trailer which tore the tarpaulin and damaged the cargo. Hartford refused to pay. Suit was instituted in the state court by Pelham

against Hartford. Judgment was secured, and pursuant to requirements of the Public Utility Commission of the Commonwealth of Pennsylvania, Hartford paid Hardinger the amount of the judgment without prejudice. Suit was then instituted by Hartford against Hardinger on the legal thesis that although the tarpaulin struck the viaduct and damaged the cargo, the tarpaulin was not a part of the tractor trailer vehicle.

In disposing of the question, it is important to note that the insurance rates charged by Hartford to Hardinger were based on the amount of business which was secured in the use of the vehicle involved, which was transporting the merchandise. Under all the circumstances, I must reach the conclusion that the tarpaulin was part of the vehicle and the vehicle cargo liability insurance policy extended protection to Hardinger.

When a party chooses language, which he puts into a form contract, and there is doubt as to its effect, general rule is that it is interpreted against him, and such rule applies to deeds, insurance policies and other documents. Liberty Mutual Insurance Co. v. Hercules Powder Co., 3 Cir., 224 F.2d 293; Beryllium Corp. v. American Mutual Liability Insurance Co., 3 Cir., 223 F.2d 71.

Since coverage exists under the provisions of the policy, judgment shall be entered in favor of Hardinger and against Hartford together with costs.

The Court enters the following Findings of Fact and Conclusions of Law:

#### Findings of Fact

1. Plaintiff is a corporation incorporated under the Laws of the State of Connecticut, and defendant is a citizen of the Commonwealth of Pennsylvania. The matter in controversy exceeds, exclusive of interest and costs, the sum of $3,000.

2. On May 31, 1951 there was in force a certain Annual Truckmen's Insurance Policy No. 100488 issued by the plaintiff, insuring the defendant against loss or damage to general merchandise and household furniture while being transported by the defendant, and providing that plaintiff shall not be liable for

" * * * loss or damage caused directly or indirectly by the load or any portion thereof coming into contact with any other object unless the carrying vehicle also collides with such object."

3. Attached to said policy was an endorsement required by the Public Utility Commission of Pennsylvania providing that no limitation contained in the foregoing policy should affect the right of any shipper or consignee, or relieve the plaintiff from liability for payment of any claim for which the insured may be held legally liable to compensate shippers or consignees, but that all terms, conditions and limitations in the policy should remain in full force and effect as binding between the assured and the company; further, that

"The insured agrees to reimburse the Company for any payment made by the Company on account of any loss or damage involving a breach of the terms of the policy and for any payment that the Company would not have been obligated to make under the provisions of the policy, except for the agreement contained in this endorsement."

4. Pelham Electric Manufacturing Corporation recovered a judgment against defendant in proceedings in the Court of Common Pleas of Erie County, Pennsylvania, at No. 571 September Term, 1952, in the sum of $3,990, together with interest and costs, by reason of an alleged loss to a cargo of custom built switchboards being transported in a trailer attached to one of defendant's trucks covered by the policy and Public Utility Commission endorsement above mentioned on May 31, 1951.

5. The Pelham Electric Manufacturing Corporation threatened to issue execution against plaintiff on the judgment herein referred to against defendant and said defendant insisted that plaintiff was obligated to pay said judgment under the terms of the Public Utility Commission

endorsement herein mentioned irrespective of any rights of reimbursement plaintiff might have against defendant under the terms of the policy and said Public Utility Commission endorsement. Both defendant and said Pelham Electric Manufacturing Corporation stated that unless said judgment was paid the matter would be reported to the Insurance Commissioner of the Commonwealth of Pennsylvania as a violation of plaintiff's obligation under the Public Utility Commission endorsement attached to the policy to pay judgments recovered by a shipper or consignee by reason of a cargo loss irrespective of conditions of the policy limiting the plaintiff's responsibility as between the insurer and the insured with respect thereto.

6. Solely by reason of the Public Utility Commission endorsement hereinabove referred to, and the request and stipulation of the defendant in which said defendant expressly agreed that she had been held legally liable to compensate a shipper within the meaning of said Public Utility Commission endorsement by reason of the judgment in the Court of Common Pleas of Erie County, Pennsylvania, above described, the plaintiff paid said judgment of the Pelham Electric Manufacturing Corporation against the defendant by its draft dated December 5, 1952 to the order of A. Grant Walker, Attorney, and Pelham Electric Manufacturing Corporation, and Hazel M. Foulke d/b/a Hardinger Transfer, the within named defendant, in the sum of $4,296.56, and in addition thereto, court costs in the sum of $16.40.

7. The plaintiff's above mentioned draft dated December 5, 1952 in the amount of $4,296.56 was endorsed by Hazel M. Foulke d/b/a Hardinger Transfer, the Pelham Electric Manufacturing Corporation, and A. Grant Walker, Attorney, under the following stipulation and agreement:

"Payment is accepted without prejudice to drawer's rights of reimbursement from Hardinger Transfer, if any, under policy 100488 and Public Utility Commission endorsement attached thereto."

8. By payment of said judgment the plaintiff did not waive the provisions of the policy and the Public Utility Commission endorsement which entitled it to reimbursement from defendant in event the loss is not covered by the policy, and that the amount due under the said judgment is $4,296.56.

9. That the trailer in which the cargo of switchboards of the Pelham Electric Manufacturing Company was being transported was a Bantam Supercargo, Model SVO28 No. 756, 28 feet long, 8 feet wide, with floor 4 feet above ground.

10. That said trailer was originally purchased new by Raymond Borst equipped with 8 removable steel roof bows and ridge rope. Said roof bows have a 6 inch fall from the middle thereof to a point level with the sides of the trailer and said trailer has an overall height of 11 feet above the ground with roof bows installed. The roof bows above referred to fitted into holes drilled into the top of the trailer's sides by the manufacturer.

11. That immediately after purchasing said trailer, Borst took the same to the Canvas Specialty Company of Cleveland, Ohio, and had a canvas tarpaulin made specially to it at a cost of $120, said tarpaulin being 32 feet by 12 feet in size, of No. 8 duck, of standard thickness. Said tarpaulin was made in such manner as to completely cover the trailer with the roof bows installed therein, and extend down the front, sides and rear of the trailer approximately one and one-half feet.

12. The tarpaulin came equipped with 12 ropes which were to be tied to permanently affixed tierods built into the lower portion of the sides of the trailer, the front of the trailer and the rear doors thereof. One of the permanently affixed side tierods to which the tarpaulin ropes were fastened is shown on plaintiff's Exhibit "K" with three tarpaulin ropes still fastened thereto. Similar horizontal tierods, permanently affixed to the trailer,

were located on the lower front of the trailer and on the rear doors thereof.

13. That the said trailer with ridge rope, roof bows and the tarpaulin above referred to, was sold by Raymond Borst to Ben McCreary; McCreary was the owner of same at the time of the occurrence of the accident in question.

14. During the period the trailer was owned by Borst and McCreary, the trailer when loaded with cargo was, in accordance with standard practice, covered by the tarpaulin in question, which completely covered the top of the trailer and was fastened by the tie ropes to the tierods on the front, rear and sides of the trailer. Said tarpaulin was never used for any other purpose.

15. That on the morning of May 31, 1951, the defendant had leased the above described trailer from Ben McCreary and attached the same to a tractor which was driven by Thomas Cahill, a driver employed by defendant, to the premises of Pelham Electric Company, 1503 German Street, Erie, Pennsylvania, for the purpose of picking up a cargo of switchboards of said Pelham Electric Company.

16. That after defendant's driver, Thomas Cahill, took the tractor and trailer above mentioned to Pelham Electric Company, Cahill backed the trailer to a doorway on the west side of Pelham's building and left the trailer there. Subsequently, the switchboards were loaded onto the trailer solely by employees of Pelham Electric Company, who also completely covered the load with the tarpaulin in question, which, together with the roof bows, had been left on the floor of the empty trailer. Pelham's employees fastened the tarpaulin tie ropes to the tierods permanently affixed horizontally along the front and sides of the trailer, and left the roof bows on the floor of the trailer.

17. On the same afternoon, Cahill, at the direction of defendant's dispatcher, returned with defendant's tractor to Pelham Electric Company. Cahill hooked the defendant's tractor to the loaded trailer and pulled it a short distance away from Pelham's building. Cahill then was able to close the rear doors and fasten the rear tarpaulin tie ropes to the horizontal tierods on the rear doors of the trailer.

18. Cahill then drove west on East 16th Street to Division Street, turned north and when passing under the Division Street subway at 15th Street, the tarpaulin and switchboards came in contact with the viaduct. As a result, the tarpaulin was torn and the switchboards were badly damaged.

19. The sidewalls of the trailer being hauled by defendant at the above time and place were 6 feet 6 inches high (78 inches) and the switchboards being hauled were 90 inches high; accordingly, the switchboard cargo, completely covered by the trailer's tarpaulin, extended above the sidewalls of the trailer a distance of one foot, plus the thickness of the tarpaulin. The steel roof bows were on the floor of the trailer and were not installed or in use when the accident took place.

20. No part of the carrying vehicle, other than the tarpaulin, came in contact with the subway when the damage was sustained to the merchandise in the tractor trailer covered by the tarpaulin.

21. The tarpaulin was part of the carrying vehicle.

### Conclusions of Law

1. That the terms and provisions of insurance policy No. 100488 issued by the Hartford Fire Insurance Company, a corporation, to Hazel M. Foulke, doing business as Hardinger Transfer Company, defendant, extended coverage to the tractor-trailer and the tarpaulin manufactured for and specifically used on the trailer.

2. That the Hartford Fire Insurance Company was obligated to reimburse Hazel M. Foulke, doing business as Hardinger Transfer Company, defendant, for the amount of the loss, to wit $3,990 together with interest and costs, which was the damage sustained to the merchandise being hauled by the defendant for the Pelham Electric Manufacturing Corporation.

3. That judgment should be entered in favor of the defendant, Hazel M. Foulke, individually and doing business as Hardinger Transfer Company, and against the plaintiff, Hartford Fire Insurance Company, a corporation, together with costs.

An appropriate Order is entered.